**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

SAMMIE MCPHAUL, as the surviving brother of
decedent, ALFRED MCPHAUL, and as the soon to
be appointed administrator of THE ESTATE OF
ALFRED MCPHAUL,

   Plaintiff,

   v.

COLLEGE HILLS OPCO, LLC, doing business as
Legacy at College Hill, and CAMPBELL STREET
SERVICES LLC,

   Defendants.

Case No. 24-1143-JWB-BGS

**MEMORANDUM AND ORDER**

   This matter comes before the Court on Plaintiff's[1] motion to amend the scheduling order

(Doc. 58), Defendants' motion to strike Plaintiff's expert designation (Doc. 68), and Defendants'

motion for extension of time to designate their expert witnesses (Doc. 56).  The primary motion

before the Court is the motion to amend the scheduling order.[2]  *See* Doc. 58.  Defendants oppose

the motion arguing that the Plaintiff failed to establish good cause and excusable neglect.[3]  *See* Doc.

65.  For the reasons stated herein, the motion to amend the scheduling order is granted.

---

[1] The Plaintiff, Sammie McPhaul, brings the claims in two capacities: (1) as an heir at law and (2) as a "soon
to be appointed administrator" of an estate.  Since the same individual (i.e., Sammie McPhaul) is bringing
both claims, it will refer to Plaintiff as singular.  The Court expresses no opinion on whether a plaintiff may
properly assert a survival action claim in the capacity of a "soon to be appointed administrator" rather than as
a duly appointed administrator of the estate.

[2] The Court will address the two other motions filed by the Defendants within this order.  However, as more
fully explained herein, those motions are secondary to the motion to amend the scheduling order.

[3] Defendants' brief violates this Court's Local Rules.  "Principal briefs in support of, or in response to, all
motions other than those set forth in subparagraphs (d)(1) and (2) above must not exceed 15 pages."  D.
Kan. Rule 7.1(d)(3).  Defendants' brief is 18 pages, and they did not seek leave to exceed the page limitation
prescribed by Local Rule.  Many judges in this District have stricken briefs or disregarded the excess pages in

## I.    Background

### a.    Factual Background

This is a nursing home negligence and wrongful death case.  Plaintiff's brother, Alfred McPhaul, decedent, was a resident at College Hills Opco, LLC d/b/a Legacy at College Hill nursing home, when he allegedly sustained and later died from an avoidable pressure injury.  Defendant Campbell Street Services, LLC, provides management services for Legacy.  Plaintiff alleges that both entities were negligent in their care of decedent and asserts the following claims against the entities: (1) a wrongful death claim in his capacity as an heir at law of decedent; and (2) a survival action in his capacity as a "soon to be appointed administrator" of the decedent's estate.

### b.    Procedural Background and Discovery Period

The Court entered its scheduling order on November 25, 2024.  *See* Doc. 24.  Discovery was authorized to begin no later than November 6, 2024, and closed on July 31, 2025.[4]  *See* Fed. R. Civ. P. 26(d)(1) (stating that a party may begin discovery after the parties' Rule 26(f) conference); Doc. 24 (setting the discovery cutoff to July 31, 2025).  Plaintiff's expert witness deadline was set for April 14, 2025, and Defendants' expert witness deadline was set for June 13, 2025.

The docket reflects that the parties got up and running with discovery shortly after the scheduling order was entered.  Plaintiff and Defendants served and responded to multiple sets of discovery.  *See* Docs. 25-28, 31-32, 43-44, 46-49.  Numerous depositions were also noticed on the docket.  *See* 34-35, 45, 50-53.  On April 2, 2025, Plaintiff conferred by telephone with defense

---

this situation.  However, in its discretion, the Court declines to do so here.  This case has been delayed long enough, but the Court warns counsel to be more attentive to the Local Rules.

[4] While the discovery deadline was set for July 31, 2025, the case stalled when the Defendants' filed their motion for summary judgment which prompted the present motions before the Court.  The Court is thus not under the impression—and the docket does not reflect—that there have been any discovery-related efforts while the motions are pending.

counsel for College Hills Opco[5] regarding discovery issues in this case as well as another case. The exact details of the conversation are unclear and disputed, but the conversation broadly concerned forthcoming document production, issues concerning depositions, and Plaintiff's upcoming expert disclosure deadline, which at this point was 12 days away.

Plaintiff believes there was an understanding between counsel that he needed an extension, and any requested extension would ultimately be agreed to, whereas College Hills Opco counsel has a completely different memory of that conversation. College Hills Opco counsel disputes that any extension was agreed to and also points to some confusion as to which case the parties were discussing. She remembers the conversation primarily pertaining to the other case and not the matter at hand. As a result, counsel proceeded with two different understandings of what occurred.

On April 27, 2025—13 days past Plaintiff's expert disclosure deadline—Plaintiff followed up on the previous telephone conversation and emailed counsel for the Defendants regarding depositions. Specifically, he said:

> We also need to propose a realistic schedule to the Court, given the upcoming schedule of depositions, to hopefully amend the scheduling order only one time. Ideally, I would suggest June 15 for Plaintiffs' experts and August 15 for Defendants' experts. Elizabeth [Campbell Street Service's counsel], do you believe we can get the above depositions scheduled sometime in May? I appreciate your assistance with scheduling.

Doc. 58-1, at 33. Counsel for College Hills Opco responded that she did not want to weigh in on the matter until she heard from Campbell Street Service's counsel. In Defendants' brief, they state that there is confusion regarding which case the email was referring to. In the end, however, Defendants did not agree to an extension of Plaintiff's expert disclosure deadline. No further response was given to Plaintiff's email, and he was not aware of disagreement until Defendants filed a motion for summary judgment. Plaintiff argues that there was an agreement between the parties,

---

[5] Counsel for Defendant Campbell Street Services did not participate in the call.

and thus assumed the Defendants would agree to more time, but that assumption was ultimately incorrect.[6]

Several weeks later, on May 20, 2025, the Defendants filed a joint motion for summary judgment. *See* Doc. 55. Therein, Defendants argue that they are entitled to summary judgment because Plaintiff is unable to meet his burden of proof due to him failing to designate an expert. *Id.* On June 10, 2025, the Defendants jointly moved for an extension of their deadline to designate expert witnesses. In that motion, they "request an extension of their expert designation deadline to a date after the Court has ruled upon their Joint Motion for Summary Judgment." Doc. 56.

On June 11, 2025, nearly 60 days after Plaintiff's expert disclosure deadline had passed, Plaintiff filed a motion to amend the scheduling order to disclose his expert out of time.[7] Doc. 58. Two days later, he filed a 6-page expert witness disclosure designating one retained expert and 10 non-retained experts. Attached as an exhibit to the expert disclosure was a 39-page submission consisting of the retained expert's report, CV, and testimony history.[8] Doc. 61. Shortly thereafter, Defendants filed a motion to strike the expert witness designation because it was filed out of time and without leave of court. Doc. 68. All three motions are ripe. The Court has carefully reviewed all the briefing and is prepared to rule.

---

[6] At no time did Plaintiff seek leave of court for an extension of the scheduling order deadlines. Any such extension was required to be filed at least three days prior to the deadline under D. Kan. Rule 6.1, if there was no clear/agreed to stipulation under Fed. R. Civ. P. 29.

[7] The date Plaintiff filed his motion to amend the scheduling order aligns with his response date to the summary judgment motion.

[8] The Court strongly encourages Plaintiff's counsel to familiarize himself with the local rules. It is not proper to (1) proceed with filing a notice of expert disclosures when the deadline has passed and remains a disputed issue pending before the Court; and (2) it is improper to file expert reports. *See* D. Kan. Rule 26.3(a)(1).

## II.    Legal Standard

When a party seeks to amend the scheduling order to disclose experts out of time, the party must show both good cause and excusable neglect.  *CGB Diversified Servs., Inc. v. Forsythe*, No. 20-2120-TC-TJJ, 2021 WL 672168, at *1 (D. Kan. Feb. 22, 2021).  Good cause requires a greater showing than excusable neglect.  *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700 (10th Cir. 2017) (quoting *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996)).  Given that "good cause" requires a greater showing, many judges in this District have only applied and analyzed the good cause standard under Fed. R. Civ. P. 16(b)(4) when a party misses their expert witness disclosure deadline. *See, e.g.*, *Little v. Budd Co.*, No. 16-4170-DDC-KGG, 2018 WL 836292, at *3 (D. Kan. Feb. 13, 2018); *White Way, Inc. v. Firemen's Ins. Co. of Washington, D.C.*, No. 22-2195-KHV-RES, 2022 WL 17177371, at *3 n.3 (D. Kan. Nov. 23, 2022); *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2016 WL 6071796, at *4 (D. Kan. Oct. 17, 2016); *Parker v. Cent. Kansas Med. Ctr.*, 178 F. Supp. 2d 1205, 1210 (D. Kan. 2001), *aff'd*, 57 F. App'x 401 (10th Cir. 2003).  The Court will provide both standards herein, but its analysis will primarily pertain to whether the good cause standard has been met.

### a.    Good Cause

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The Tenth Circuit has held that the good cause standard requires the movant to show that "scheduling order deadlines cannot be met despite the movant's diligent efforts."  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988-89 (10th Cir. 2019).  *See also* Fed. R. Civ. P. 16 advisory committee's note to the 1983 amendment (stating that good cause exists when a deadline cannot reasonably be met despite a party's due diligence).  The good cause standard also requires the moving party to provide an adequate explanation for any delay.  *Tesone*, 942 F.3d at 988.

"[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Ikona v. AHC of Overland Park, LLC*, No. 22-2016-KHV-RES, 2022 WL 4245478, at *4 (D. Kan. Sept. 15, 2022) (quoting *Tesone*, 942 F.3d at 989). Likewise, the failure to proceed with the normal process of discovery does not typically equate to good cause under Rule 16. *Id.*

The Court is "afforded broad discretion in managing the pretrial schedule." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011). "Despite this 'broad discretion in managing the pretrial schedule,' the Tenth Circuit has concluded that 'total inflexibility is undesirable.'" *Little v. Budd Co.*, No. 16-4170-DDC-KGG, 2018 WL 836292, at *2 (D. Kan. Feb. 13, 2018) (quoting *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997)). *See also Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("While a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril, rigid adherence to the ... scheduling order is not advisable." (citations and internal quotation marks omitted)). Therefore, the Court must maintain some degree of flexibility, particularly when it may result in the exclusion of evidence. *See id.* "[A] scheduling order which produces an exclusion of material evidence is a 'drastic sanction'" and is subject to more careful scrutiny. *Little*, 2018 WL 836292, at *2.

### b. Excusable Neglect

Fed. R. Civ. P. 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Excusable neglect is an "elastic concept" and is not limited to circumstances beyond the movant's control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). The court generally considers four factors when determining whether a party's actions establish excusable neglect:

6

> (1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for delay and whether it was in the reasonable control of the moving party and (4) the existence of good faith on the part of the moving party.

*Id.* Courts must look to the entire circumstances of the case, but fault in the delay remains a very important factor. *Dryden v. City of Hays, Kan.*, No. 11-1354-KGS, 2012 WL 2993914, at *2 (D. Kan. July 20, 2012).

## III.    Analysis

Plaintiff moves to amend the scheduling order arguing that he has shown good cause and excusable neglect and alternatively argues that if those standards have not been met, then excluding his experts would be too harsh of a result.  The Court will first analyze whether Plaintiff has shown good cause/excusable neglect.  In the event Plaintiff fails to meet those standards, then the Court will determine whether the exclusion of his expert is appropriate.

### a.    Plaintiff has not shown good cause

Plaintiff contends he has established good cause by arguing he has met three "elements." While the Court does not agree with Plaintiff's characterization of the standard as elements to be met, it will consider each argument in turn.

Plaintiff first argues that he has demonstrated diligence because "the combination of Defendants' systematic delays in producing critical information and their scheduling of key depositions after the expert designation deadline created a situation where compliance with the [expert] deadline was literally impossible."  Doc. 58, at 6.

He next argues that the reasons for the delay are not his fault and the need for more time was unforeseeable.  Specifically, Plaintiff argues that he requested depositions necessary for his anticipated expert testimony 30-days in advance of his expert disclosure deadline.  However, according to Plaintiff, he became aware on March 25, 2025, that none of the necessary depositions

could occur until after the deadline. What's more, he claims there were delays in the production of critical medical records that amounts to a violation of the Court's previous order authorizing its production. He states he did not receive these medical records until March 20, 2025.

Lastly, he argues that Defendants previously agreed to an extension but reversed their position which constitutes prejudicial conduct. He also argues that he learned critical evidence during depositions which may have affected his forthcoming expert's analysis.

Defendants, on the other hand, contend that Plaintiff could have taken earlier action to begin discovery efforts instead of waiting 58 days after his expert disclosure deadline to file a motion addressing the issue. Doc. 65, at 16-17. Defendants also dispute that they previously agreed to any extension.

None of Plaintiff's arguments are persuasive to the Court. During the discovery period, Plaintiff's brief details what he believes was a pattern of delays in which critical documents were withheld for significant periods of time. Doc. 58, at 1-2. Additionally, Plaintiff believed that depositions were needed before he could designate experts. *Id.*, at 2. Filing deposition notices also took time due to the number of depositions needed and the availability of witnesses and counsel. However, Plaintiff's attempt to blame Defendants for the delay in discovery does not amount to diligent efforts. As Defendants state in their brief, Plaintiff also engaged in dilatory conduct. There were numerous times in which Plaintiff did not timely respond to discovery, delayed the scheduling of depositions, or delayed in requesting medical records. *Id.*, at 14-16. The Court recognizes that there are some factual disputes as to who's at fault for the delays in document production; however, the Court need not inject itself into that kerfuffle between the parties. The relevant inquiry is looking into the steps that Plaintiff took after he learned that the relevant deadlines could not be met. *See Tesone*, 942 F.3d at 988.

8

Plaintiff's expert deadline was April 14, 2025.  On April 2, 2025, Plaintiff raised the possibility of potential scheduling order adjustments, including an extension of his expert deadline, with defense counsel for College Hills Opco.  There was recognition that an extension would likely be necessary, but there was no explicit agreement made.  Despite being aware of the scheduling issues almost two weeks prior to the deadline, Plaintiff took no steps to request an extension of time from the Court in accordance with D. Kan. Rule 6.1(a).

After the April 2 conversation, he never raised the issue with Campbell Street Services and didn't reach out to defense counsel again until April 27, 2025—after the expert disclosure deadline had already passed.  In that correspondence, Plaintiff again suggested that additional time is needed to designate an expert, but no agreement was reached.  Despite this, Plaintiff still took no action to tee this issue up with the Court.  He did not file a motion until nearly two months after the expert disclosure deadline.  Ignoring deadlines and failing to take action is not acceptable and amounts to carelessness on the part of the Plaintiff.  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Ikona*, 2022 WL 4245478, at *4.  Given Plaintiff's lack of action in response to his need for an extension of time, the Court cannot find that Plaintiff exercised any degree of due diligence.

While the Plaintiff provides reasons for why an extension may have been necessary, he provides no explanation for his delay in seeking relief.  Indeed, the good cause standard requires the moving party to provide an adequate explanation for any delay.  *Tesone*, 942 F.3d at 988.  Plaintiff's own motion states that he became aware of the impossibility of the current scheduling deadlines on March 20, 2025, which was 25 days prior to his expert disclosure deadline of April 14, 2025.  He states that Defendants' late production and inability to accommodate earlier depositions made the current scheduling deadlines untenable.  Yet Plaintiff took no action.  He sought no relief from the Court or otherwise took any steps to address the issue.  The need for additional time was indeed

foreseeable as he learned at least 25 days before the deadline that more time was needed. As such, the Court cannot find that Plaintiff has provided an adequate explanation for his delay.

Plaintiff has also failed to establish that the Defendants agreed to extend any expert deadline. He points to a conversation he had with College Hills Opco's counsel on April 2, 2025. During that conversation, they conferred regarding discovery issues pertaining to this case and another case pending in this District. The conversation pertained to forthcoming document production, issues concerning depositions, and Plaintiff's upcoming expert disclosure deadline. However, there is no record that counsel jointly agreed to extend his expert deadline. Moreover, the conversation only took place between counsel for Plaintiff and College Hill Opco. Counsel for Defendant Campbell Street Services LLC did not participate in the above conversation. Therefore, any agreement would not have included Campbell Street Services.

Moreover, on April 27, 2025 (13 days past Plaintiff's expert disclosure deadline), Plaintiff contacted counsel and suggested that his expert disclosure deadline be moved to June 15, 2025, and for Defendants' expert disclosure deadline be moved to August 15, 2025. This would seem to suggest that there had not been any solidified agreement in place in which the parties agreed to extend his expert deadline. Additionally, given that there have been overlapping conversations between two separate cases, there was apparently confusion regarding which cases the parties were referring to and what agreements, if any, were made. The Court does not find that Plaintiff's previous communications with defense counsel amount to good cause.

As to Plaintiff's argument that he learned evidence that would affect his expert's analysis, that is similarly unconvincing. The deposition in which he learned this new evidence occurred on May 23, 2025, which was nearly a month after his expert disclosure deadline had passed. Even accepting Plaintiff's assertion that he learned new evidence as true, that still would not establish good cause: his deadline had already passed. It may be true that what he learned could have been

good cause to supplement an already disclosed expert report, but it certainly does not establish good cause to disclose an expert out of time, as is the case here.[9]  Plaintiff provides no explanation for why he did not act sooner, which again undermines any claim of good cause.

Accordingly, for the reasons stated above, the Court finds that Plaintiff has failed to establish good cause.  *See Ikona v. AHC of Overland Park, LLC*, No. 22-2016-KHV-RES, 2022 WL 4245478, at *4-5 (D. Kan. Sept. 15, 2022) (finding that plaintiff did now show good cause to disclosure experts out of time because she was not diligent and did not provide an adequate explanation for the delay).

### b.  Plaintiff has not established excusable neglect.

Since Plaintiff has not met the "good cause" standard, the Court need not make a finding as to excusable neglect.  *See White Way, Inc.*, 2022 WL 17177371, at *3 n.3.  However, since the parties devote time in the briefing arguing whether excusable neglect is present, it will briefly address it.

Plaintiff argues that his failure to timely disclose his expert was a result of excusable neglect because there is "little prejudice to defendants" and the "requested extension is modest."  *See* Doc. 58, at 14-15.  Defendants spend most of their briefing arguing whether excusable neglect is present.[10]  They argue that there has been substantial prejudice to them and there is no adequate explanation for the delay.

Here, the Court finds that excusable neglect is not present.  As stated above, the factors the Court must consider are:

> (1) the danger of prejudice to the opposing party, (2) the length of delay caused by the neglect and its impact on judicial proceedings, (3) the reason for delay and whether it was in the reasonable control of the moving party and (4) the existence of good faith on the part of the moving party.

---

[9] The Court is taking no position as to whether any good cause would have been established to supplement an expert report.  It is merely highlighting the distinction between the two situations.

[10] Most of the Defendants' arguments have been considered in the context of whether the good cause standard had been met.  So, it will not repeat all of Defendants' arguments in this section.

*Pioneer Inv. Servs. Co.*, 507 U.S. at 392. The factors do not weigh in Plaintiff's favor. Defendants have been prejudiced because Plaintiff's failure to act resulted in them incurring expense in filing a motion for summary judgment as well as numerous other motions pertinent to the missed deadline. They are also deprived of a "just, speedy, and inexpensive determination" of this action consistent with Fed. R. Civ. P. 1.

The length of the delay is also considerable. The Plaintiff waited nearly two months after his expert disclosure deadline before filing the instant motion. In fact, he did not file his motion until his response for summary judgment was due. The length of delay is nearly one third of the entire discovery period and is not consistent with a finding of excusable neglect. Further, as discussed above, Plaintiff has not provided an adequate explanation for the delay. He knew the deadline had passed and repeatedly delayed filing the present motion. This, by itself, is sufficient to reject a finding of excusable neglect. *Perez v. El Tequila, LLC*, 847 F.3d 1247 , 1253 (10th Cir. 2017). After consideration of the factors, the Court finds excusable neglect is not present.

### c.  Disallowing Plaintiff's expert report would be too harsh of a result

Despite the Court's finding that Plaintiff has not shown good cause or excusable neglect, not allowing him to serve an expert result would severely hamper his ability to present his case. Denying the motion to amend the scheduling order could effectively be dispositive of the case because he would likely be unable to meet his burden to prove his claims of medical malpractice and negligence. Indeed, there is a pending motion for summary judgment looming on this very issue. *See* Doc. 55.

If denying a request to amend the scheduling order would result in the exclusion of evidence that would be dispositive, such as experts, then it is subject to more careful scrutiny. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017). In such instances, the Court must consider other lesser sanctions or other measures to cure the prejudice to the opposing party. *White Way, Inc.*, 2022 WL 17177371, at *5. *See also Gillum v. United States*, 309 F. App'x 267,

270 (10th Cir. 2009) (reversing district court's exclusion of a medical malpractice expert's testimony after service of a deficient expert report that ultimately resulted in the district court granting defendant's summary judgment motion).  In making the determination of whether the exclusion of evidence (i.e., Plaintiff's expert report) is warranted, the Court must consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *HCG Platinum, LLC*, 873 F.3d at 1200.  After carefully reviewing the factors, the Court finds that the exclusion of Plaintiff's expert report is too harsh of a result.[11]

### i.  The Defendants have been prejudiced

Plaintiff argues that "there is limited prejudice or surprise to Defendants."  Doc. 58, at 13. Specifically, he contends Defendants "were aware of Plaintiff's intention to designate experts after key depositions and had explicit discussions with Plaintiff's counsel about extending deadlines." *Id.* Notably, out of Defendants' 18 pages of briefing, they dedicate about ½ page to whether these factors have been met.  While they do not argue whether they are prejudiced in the section regarding the case-dispositive result, they do argue prejudice in other areas of their brief.  The Court will incorporate those arguments herein.  Defendants argue that they have incurred the time and expense of filing numerous motions in response to Plaintiff's failure to follow deadlines.

The Court agrees Defendants have been prejudiced.  As previously discussed in the excusable neglect section, Defendants are prejudiced because they have incurred expense in filing numerous motions pertinent to the missed deadline and they are deprived of a timely resolution of

---

[11] The Court will primarily focus on the prejudice to the Defendants and whether any prejudice can be cured (i.e., factors 1 and 2).  However, factors 3 and 4 weigh in Plaintiff's favor.  As it pertains to factor 3, there is no trial currently set which means that any amendments to the scheduling order will not disrupt trial. Further, as to factor 4, while Plaintiff's delay is unacceptable, it does not rise to the level of bad faith.

this case.  *See* Fed. R. Civ. P. 1 (stating that Federal Rules should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding").  Plaintiff even concedes that "there may be some prejudice to Defendants."  Doc. 58, at 12.  However, he reiterates his previously failed arguments that his failure to meet the deadline were Defendants' fault or they were aware of his intention to designate experts after key depositions.  Aside from the fact that it is Plaintiff's fault alone that he missed the deadline, the Defendants should not have to guess when Plaintiff may designate an expert.

The Court sets deadlines in the scheduling order and expects parties to abide by them, or if necessary, seek additional time.  It is not for the parties to decide which deadlines they can abide by or how long after a deadline passed is appropriate to seek additional time.  When a party ignores a deadline, they do so at their own peril, and they should not blame other parties for their failure to act.  Therefore, the Court finds that the Defendants have been prejudiced and Plaintiff's arguments to the contrary are unpersuasive.

### ii.  Defendants' prejudice can be cured

Despite the findings above, the Court is compelled to find that the prejudice can be cured. Plaintiff argues that any prejudice "is readily cured by extending all deadlines by 30 days, allowing Defendants ample time to depose Plaintiff's experts and prepare their own expert designations." Doc. 58, at 13.  Defendants do not argue this factor anywhere in their brief.  Instead, they argue "any detrimental impact is a problem of Plaintiff's own making."  Doc. 65, at 17.  They go on to reiterate the same positions maintained throughout their response brief.

The Court is compelled to find that the prejudice can be cured.  *See White Way, Inc.*, 2022 WL 17177371, at *7 (finding that prejudice could be cured when Plaintiff missed the expert disclosure deadline); *see also Ikona*, 2022 WL 4245478, at *8 ("Any prejudice AHC may suffer from an extension of Plaintiffs' expert witness deadlines can and will be cured by a commensurate extension to AHC's

expert witness deadlines"); *Gillum*, 309 F. App'x at 270 (finding reversible error when the district court did not adequately consider the "cure" factor).

In *Gillum*, the Tenth Circuit reversed the district court's exclusion of expert testimony. *Gillum*, 309 F. App'x at 270. In that case, the lower court granted a motion in limine to exclude expert testimony about 4 months prior to trial because the written report failed to comply with Rule 26(a)(2) and counsel could not adequately prepare for the deposition. *Id.* at 268. The exclusion of the expert report ultimately resulted in a grant of summary judgment in favor of the Defendant. *Id.* The Tenth Circuit concluded that the lower court abused its discretion in analyzing the "cure" factor. *Id.* at 270. It found that the prejudice could be cured and that the total exclusion of expert testimony was too extreme a sanction. *Id.*

In this case, the Court must give sufficient weight to the "cure" factor in line with Tenth Circuit precedent. The discovery period was far from complete when these issues arose and trial was not set, and if it was, it likely would have been many months away. Here, the prejudice can be cured by deeming Plaintiff's expert disclosure timely served, giving Defendants' time to designate their experts, and resetting the case schedule.[12] The Court emphasizes that it does not condone

---

[12] On this note, the Court will rule on the other two motions. The Defendants jointly requested "an extension of time to designate their expert witnesses to a date after the Court rules on their Joint Motion for Summary Judgment." Doc. 56, at 1. That motion is granted in part. The Court will grant an extension of time for Defendants to designate experts; however, it will not wait until the summary judgment motion is ruled on given that could be several months down the road. Instead, the Court will reset the deadline at the September 3, 2025, telephone conference. As it pertains to the motion to strike (Doc. 68), that motion is denied. The motion to strike requested that the Plaintiff's expert designations be struck because they "were filed two months after his expert designation deadline expired, and he did not obtain agreement of counsel or leave of Court to file them out of time." Doc. 68, at 1. However, as just ruled, the Court grants Plaintiff's motion to amend the schedule and permits the June 13, 2025, expert witness designation filed by Plaintiff timely served, notwithstanding that it was filed without prior leave of court. Thus, there is no longer a basis to strike the expert disclosures. Further, Defendants notified the Court in their brief that Plaintiff's report is "technically insufficient and fails[] to comply with Fed. R. Civ. P. 26(a)(2)." These issues are not ripe for court adjudication. Defendants are directed to serve Plaintiff with their technical objections within 14-days of this order. After service of the objections, the parties are directed to confer in accordance with D. Kan. Rule 37.2. The parties are strongly encouraged to engage in good faith discussions and attempt to cure any deficiencies in the disclosures without court involvement. If necessary, the parties may address this in the

Plaintiff's behavior nor does it find his dilatory actions acceptable; however, it must allow an opportunity to cure before excluding evidence which may be case dispositive. Plaintiff's counsel is warned that future failures to comply with the deadlines set forth in the scheduling order could result in case dispositive sanctions. The Court has no appetite for further delays, particularly from Plaintiff's counsel.

Accordingly, the Court grants Plaintiff's motion and permits the June 13, 2025, expert witness designation filed by Plaintiff timely served, notwithstanding that it was filed without prior leave of court. Since Plaintiff has already disclosed his experts, the Court will not establish a new expert deadline for Plaintiff. The parties shall confer and submit a joint status report by August 26, 2025, addressing remaining discovery, deposition scheduling, and proposed deadlines for Defendants' expert witness disclosure and close of discovery. A telephone conference is scheduled for **September 3, 2025, at 2:00 p.m.** Counsel are directed to call (316) 402-0044 and enter conference ID number 485 069 538 to participate in the conference.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend the scheduling order (Doc. 58) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants serve Plaintiff with their technical objections to his expert disclosures within 14-days of this order. After service of the objections, the parties are directed to confer in accordance with D. Kan. Rule 37.2. The parties are strongly encouraged to engage in good faith discussions and attempt to cure any deficiencies in the disclosures without court involvement. If necessary, the parties may address this in the August 26, 2025, status report and request that it be addressed in the September 3, 2025, telephone call.

---

August 26, 2025 status report and request a pre-motion conference with the Court pursuant to D. Kan. 37.1(a) if all other requirements are met.

**IT IS FURTHER ORDERED** that a telephone conference is set for **September 3, 2025, at 2:00 p.m**.  Counsel are directed to call (316) 402-0044 and enter conference ID number 485 069 538 to participate in the conference.  By **August 26, 2025,** the parties are further directed to submit a joint status report which includes the parties' proposed deadlines and any scheduling-related issues.

**IT IS FURTHER ORDERED** that Defendants' joint motion for an extension of time (Doc. 56) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike Plaintiff's June 13, 2025 expert designation (Doc. 68) is **DENIED**.

**IT IS SO ORDERED.**

Dated August 5, 2025, at Wichita, Kansas.

/s/ BROOKS SEVERSON
Brooks G. Severson
United States Magistrate Judge